UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

| | | |
|---|---|---|
| Diane Davis | : | |
| | : | |
| Plaintiff, | : | |
| | : | 09 CV 669 (HB) |
| - against - | : | |
| | : | OPINION & |
| The City of New York, | : | ORDER |
| The New York City Policy Department, | : | |
| Chief Charles Campisi, | : | |
| Captain Albert Pignataro, Lieutenant Edward | : | |
| Gonzalez, Sergeant Robert Rivera, and | : | |
| Inspector Alan Cooper, | : | |
| individually and in their official capacities, | : | |
| | : | |
| Defendants. | : | |

----------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

Plaintiff Diane Davis is a New York City Police Detective, and alleges she was subjected to a hostile work environment, gender-based employment discrimination, and retaliation. She claims violations of Title VII, 42 U.S.C. §§ 1983, 1985, New York State Human Rights Law (SHRL), and New York City Human Rights Law (CHRL). Defendants now move for summary judgment dismissing all claims. The motion is granted in part and denied in part.

## I.   Factual Background

On August 31, 2005, Davis was a Detective Third Grade with the NYPD Internal Affairs Bureau ("IAB") group 22, located in the Bronx. On that day she found a pair of soiled women's panties in her drawer. Affidavit of Plaintiff Diane Davis in Opp. to Def.'s Mot. for Summ. J. ("Davis Aff."), Ex. E at 7. Davis asked other officers about the incident, and ultimately received the explanation that the panties had been placed there by defendant Sgt. Robert Rivera because he thought they belonged to her. *See* Defendants' Rule 56.1 Statement in Supp. of Mot. for Summ. J. ("Defendants' 56.1") ¶ 17. Feeling upset and victimized, Davis reported the incident up the chain of command and the NYPD Office of Equal Employment Opportunity ("OEEO") was notified. Davis Aff., Ex. E at 7-9; Defendants' 56.1 ¶ 25. The incident was investigated by a special

investigations unit within the IAB, which concluded on September 20, 2005 that no harassment claim had been substantiated.  Defendants' 56.1 ¶¶ 24, 26.

On the day of the incident, Davis met with Captain Pignataro and told him she wanted to transfer as a result of the incident.  Davis Aff., Ex. E at 176.  She was transferred to a different group, but one in the same bureau, same building and same floor as the group where the incident occurred.  Despite multiple subsequent efforts to be transferred to different posts, she was ultimately transferred at the end of September to yet another IAB group, albeit one in Manhattan rather than the Bronx.  Davis Aff., Ex. E at 135-48; Defendants' 56.1 ¶ 28; Complaint ¶ 35.

Following the incident, superior officers would direct profanities at her when they passed her in the hall.  Davis Aff., Ex. E at 107, 215.[1]  Word of the panty incident circulated among coworkers, as did word of the related complaint.  *Id.* at 28, 123-24.  Colleagues were told to watch out for Davis because she was a trouble maker and liked to file EEO complaints, and Davis asserts that this lead other detectives to avoid work assignments with her.  *Id.*

Davis claims that from 2006 to 2008, at least 155 detectives of her rank were promoted while she was not, and many of these were less senior than her.  Plaintiff's Rule 56.1 Counterstatement ("56.1 Counterstatement") ¶ 46.  Moreover, she claims, she was passed over despite having been twice recommended for promotion.  *Id.* ¶ 45.

Plaintiff filed a statement with the United States Equal Employment Opportunity Commission alleging discrimination against the NYPD, and received her right to sue letter on October 31, 2008.  Defendants' 56.1 ¶8.  She commenced this action on January 23, 2009.

## II.  Discussion

### a.  Legal standard

A court will not grant a motion for summary judgment pursuant to Rule 56 unless it determines that there is no genuine issue of material fact and the undisputed facts are sufficient to warrant judgment as a matter of law.  Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, (1986).  The Court must construe the evidence in the light most favorable to the

---

[1] For example, Davis claims that officers would direct comments to her such as "bitch", "I'm not afraid of you bitches" and "this fucking woman, women complain."

nonmoving party, drawing all inferences in that party's favor.  *Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir. 2005).  Courts must use particular caution in dismissing discrimination claim on summary judgment because the employer's intent is often at issue and requires careful factual analysis appropriate for the jury.  *See Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008).

### b.  Timeliness of claims

Defendants claim that any Title VII claim premised on events prior to September 28, 2007, is barred by the applicable 300 day statute of limitations, and any claim under SHRL, CHRL and section 1983 premised on events prior to January 23, 2006, is barred by the applicable 3 year statute of limitations.

Under the continuing violations doctrine, events that fall outside the statutory time period may be considered in support of a hostile work environment claim provided that at least one act supporting the claim occurs within the time period.  *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *see also Patterson v. County of Oneida, N.Y.,* 375 F.3d 206, 220 (2d Cir.2004).  This does not apply to "discrete" incidents of discrimination that are alleged independently of a hostile work environment claim.  *See Morgan*, 536 U.S. at 114; *Barbaro v. U.S. ex rel. Federal Bureau of Prisons FCI Otisville*, 521 F.Supp.2d 276, 281 (S.D.N.Y. 2007).  Both "failure to promote [and] denial of transfer" are examples of such "discrete" discriminatory acts.  *See Morgan*, 536 U.S. at 114.  Title VII's time limitations do not bar an employee from using untimely conduct as background evidence in support of a timely claim.  *Id.* at 113.

Defendants accept that, for purposes of this motion, at least some of the treatment giving rise to Plaintiff's hostile work environment claim occurred within the time period.  Accordingly, the facts proffered beginning with the panty incident are timely under *Morgan* because they all contributed to the same general environment of hostility.

The gender discrimination and retaliation claims are also timely.  They accrue on the date the Plaintiff knew or had reason to know of the alleged injury, *Washington v. County of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004), here Defendants' failure to promote.  While it is difficult to ascertain the point at which an event failed to happen, it is possible for present purposes to say that Plaintiff suffered the alleged injury no earlier than December 12, 2007.  Davis has submitted

3

(disputed) evidence that on that date she was recommended and qualified for a promotion, yet was not promoted. *See* Counterstatement ¶ 45. This puts her gender discrimination and retaliation claims, filed January 23, 2009, well within the three-year period. Plaintiff may use conduct prior to January 23, 2006 only as "background evidence" to support those claims. *See Morgan*, 536 U.S. at 113.

### c. Hostile Work Environment Claims

To survive summary judgment on her federal hostile work environment claims, Plaintiff here must proffer sufficient evidence to allow the trier of fact to find disparate treatment based on gender, resulting in a hostile work environment sufficiently severe or pervasive to alter the conditions of her employment and create an abusive environment. *See Pucino v. Verizon Communications, Inc.*, -- F.3d 3805, 3812, 2010 WL 3191433, *4 (2d Cir. 2010) (*quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).[2] Disparate treatment based on gender may be proven where sex-specific and derogatory terms make it clear that the remarks were motivated by general hostility to the presence of women in the workplace. *Pucino*, -- F.3d at 3812. While the use of the word "bitch" often reflects an intensely degrading hostility towards women, it is for the trier of fact to determine whether in a particular instance such remarks evidenced gender animus. *See Pucino*, -- F.3d at 3813-84.[3]

The panties in Davis' desk drawer and the use of gender-specific derogatory epithets are clearly gender-charged conduct. Likewise, the criticism aimed at Davis for filing an OEEO complaint and her isolation as a result of the filing constituted disparate treatment. Whether such conduct was sufficiently "severe or pervasive" is a more difficult question, but Plaintiff raises

---

[2] The standard under SHRL is the same, *see Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 310 (2004), and under CHRL the standard is broader. *See Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 77-79 (1st Dept. 2009). However, analysis of the these claims under CHRL would compel the same result as that reached in the analysis of Plaintiff's claims under federal and state law.

[3] The showing required for a retaliatory hostile work environment is similar, except that the disparate treatment must be motivated not by discrimination based on plaintiff's membership in a protected group, but by retaliation for plaintiff's having engaged in a protected activity. *See Gordon v. New York City Bd. Of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000). Once plaintiff shows a causal connection between the protected activity and the adverse conduct, the same "severe or pervasive" standard applies. *See Hall v. N.Y.C. Dept. of Transp.*, 06 CV 2908, 2010 WL 1260198, *16 (E.D.N.Y. Apr. 29, 2009).

issues of material fact that require the denial of this aspect of the motion for summary judgment.
*See Morgan*, 536 U.S. at 16.

### d.   Gender discrimination and retaliation claims

Defendants claim that Plaintiff has failed to muster facts giving rise to an inference of gender discrimination[4] or retaliation. [5]  Defendants concede that the failure to promote may constitute an adverse employment action.  *See* Memo. of Law in Supp. of Defendants' Mot. for Summ. J. at 13.  Thus, the Defendant is entitled to summary judgment only if Plaintiff has raised no issue as to whether the adverse employment action was linked to her gender or her having initiated a complaint.

Direct evidence of discriminatory intent is rare, and a plaintiff need only show facts giving rise to an inference that plaintiff's gender "played a motivating role in, or contributed to, the employer's decision."  *Renz v. Grey Advertising, Inc.*, 135 F.3d 217, 222 (2d Cir. 1997).  The Second Circuit has consistently held that "a plaintiff in an employment discrimination case need not prove that discrimination was the sole motivating factor, the primary motivating factor, or the real motivating factor in the adverse employment action; she need only prove that discrimination was a motivating factor."  *Olson v. New York*, 315 Fed.Appx. 361, 363, 2009 WL 690236, 1 (2d Cir. 2009).

"A plaintiff may rely on incidents of sex-based abuse to show that other ostensibly sex-neutral conduct was, in fact, sex-based."  *Pucino*, -- F.3d at 3813.  The repeated use of gender-charged words of abuse and harassment, together with the panties incident—itself a gender-charged act—are sufficient to show gender-based animus in the workplace and, construing these

---

[4] A plaintiff alleging employment discrimination under Title VII or SHRL must show that "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination."  *Compare Leibowitz v. Cornell University*, 584 F.3d 487, 498 (2d Cir. 2009) *and Forrest*, 3 N.Y.3d at 305.  While CHRL may entail a broader approach, *see Kumuga v. N.Y.C. Scho. Const. Auth.*, 2010 WL 1444513, *14 (N.Y. Sup. Ct. Apr. 2, 2010), it compels the same result here.

[5] To establish retaliation under Title VII, an employee must show that: "(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer."  *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000).

facts in favor of Davis, a reasonable jury could find that such animus infected the decisions to neither promote nor transfer Davis.

With respect to retaliation, Davis has proffered comments from superiors and other colleagues that reveal animosity towards her for having initiated the complaint.[6]  These facts raise a material issue as to whether such animosity caused the adverse actions alleged.   Summary judgment is denied.  *See Holcomb*, 521 F.3d at 137.

### e.   Section 1983 claims against individual defendants

Defendants argue that the section 1983 claims should be dismissed on the basis of qualified immunity.  Qualified immunity protects government officials from suit arising from their discretionary conduct unless that conduct would reasonably be understood to violate a clearly established statutory or constitutional right.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Richardson v. Selski*, 5 F.3d 616, 621 (2d Cir. 1993).  Here, the rights allegedly violated protect against gender-based discrimination, retaliation and hostile work environments.  Such rights are sufficiently clear that a reasonable police official should understand them.  *See Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998).  Consequently, qualified immunity will not attach.

### f.   Claims to be dismissed.

Plaintiff's section 1983 claim against New York City must be dismissed.  To establish municipal liability, a "plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy." *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991) (citing *Monell v. Department of Social Services,* 436 U.S. 658, 690 (1978)).  Here, Davis provides no evidence of a custom or policy that led to the alleged constitutional violations, nor of a failure to properly train the individual defendants, nor of a failure to address or investigate the allegations.  While Plaintiff raises legitimate concerns about the impartiality and independence of the initial investigation that was conducted by an internal IAB unit, Captain Pignataro notified superiors and the OEEO about the incident the day after it happened.  *See* Defendants' 56.1 ¶ 25.  Thus any shortcomings in the internal investigation would not have precluded later independent

---

[6] Among other things, colleagues commented that she was a trouble maker, liked to "make EEOs", that people should be careful around her, and that "women complain."  Davis Aff., Ex. E at 107, 123-24.

review.  Plaintiff has raised no triable issues as to the existence of any facts that would establish municipal liability, and defendants are entitled to judgment as a matter of law.

All Title VII claims against individual defendants are dismissed because, in the Second Circuit, "individuals are not subject to liability under Title VII", *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 221 ( 2d Cir. 2004), even if they exercise "supervisory control over a plaintiff." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir.1995), *abrogated on other grounds by Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).  *See also Adams v. New York State Educ. Dept.*, 2010 WL 3306910, *35 (S.D.N.Y. 2010).

All claims under 42 U.S.C. § 1985 are voluntarily dismissed by Plaintiff, as are all claims against the NYPD.

### III. Conclusion

For the reasons stated above, the Defendants' motion for summary judgment is GRANTED to the extent of dismissing all Title VII claims against individual defendants, all claims under 42 U.S.C. § 1985, all claims against the NYPD, and all section 1983 claims against the City of New York.  Defendants' motion is otherwise DENIED.  The clerk of the Court is instructed to close the motion.

**SO ORDERED**

October 5 , 2010

**New York, New York**

                                                      **Hon. Harold Baer, Jr.**
                                                             **U.S.D.J.**